**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CONSOLIDATION COAL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF THE | ) |
| INTERIOR, NATIONAL PARK SERVICE, et al. | ) |
| | )  CIVIL ACTION No. 00-2120 |
| Defendants. | ) |
| | ) |
| ROY BRENDEL and DIANE BRENDEL, | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| INTERIOR, OFFICE OF SURFACE MINING | ) |
| RECLAMATION AND ENFORCEMENT, et al. | ) |
| | ) |
| Third-Party Defendants. | ) |

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS COMPLAINT
OF CONSOLIDATION COAL COMPANY
(Oral Argument Requested)**

Defendants-Third-Party Plaintiffs Roy and Diane Brendel, by and through their counsel, David C. Hook and Michael V. Nixon, submit this brief in support of their motion to dismiss, pursuant to F.R.Civ.P 12(b)(1) and (6), the Complaint and claims filed by plaintiff Consolidation Coal Company ("Consol"). The Brendels respectfully request oral argument on their motion.

The applicable law and regulations are the National Historic Preservation Act of 1966, as amended ("NHPA"), and the implementing regulations of the Secretary of the Interior ("the

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS - 1**

Secretary"), Keeper of the National Register ( "the Keeper"), found at 16 U.S.C. 470, et seq., and 36 C.F.R. Part 60, respectively.   See also, Exhibit 1 of the Exhibits in Support of Brendels' Motion to Dismiss ("the Exhibits"), for relevant excerpts of the legislative history of the 1980 amendments to the NHPA , and see Exhibit 2 for the regulatory history of the NHPA's definition of "owner."  All of the Exhibits are incorporated herein by this reference.

There are <u>no facts</u> supporting Consol's claim under the National Historic Preservation Act to be an <u>"owner"</u> of the Brendels' historic home, and therefore, Consol's attempt to exercise the right of an historic property owner to object and thereby prevent the listing (or in this instance, to thereby cause de-listing) of this historic property in the National Register of Historic Places in the United States shall and must fail.  And <u>no such facts exist</u> to support Consol's outrageous claim of ownership of the Brendels' home and related buildings.  Consol does not have standing to make such a claim.

"Owner" is defined under the National Historic Preservation Act ("NHPA") to mean one "holding fee simple title to property."  36 C.F.R. 60.3.  <u>Consol has no ownership interest in the Brendels' historic home at all</u>, <u>and does not hold "fee simple title" to the Major Ernest B. Thralls House and related buildings</u>, which are solely owned by the Brendels and listed in the National Register of Historic Places in the United States ("the National Register" or "NR").  For example, the Brendels did not need Consol's permission to purchase their home, nor do they need Consol's permission to sell it, gift it, remodel it, dismantle it, move it, *etc.*, *etc*.

Likewise, Consol's inexcusable failure to exhaust the explicit and available administrative remedy of an administrative petition to the Secretary of the Interior, Office of the Keeper of the National Register, pursuant to 36 CFR 60.15, to "de-list" the National Register-listed Ernest Thralls

House, deprives this Court of subject matter jurisdiction.   See <u>White v. Shull</u>, 520 F.Supp. 11 (S.D.N.Y. 1981)(lack of subject matter jurisdiction over suit for failure to first petition Keeper to de-list).

The same rule of law applies to Consol's failure to exhaust the available administrative remedy of petitioning the Secretary over Consol's disagreement with the validity of the Keeper's definition by rule of "owner": "Where a plaintiff is challenging the validity of a regulation, the rule of exhaustion normally requires that the plaintiff petition the agency for rulemaking....In this case, there is no question that plaintiffs failed to exhaust their administrative remedies because they never petitioned [the agency] for rulemaking." <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (3rd Cir. 1997)(citing <u>South Hills Health System v. Bowen</u>, 864 F.2d 1084 (3rd Cir. 1988)).

**BACKGROUND FACTS**

The Brendels purchased the Major Ernest B. Thralls House and real property in 1972 and have owned their home continuously since then.  A copy of their deed and Greene County property tax records accompany this memorandum as Exhibit 3, and are incorporated herein by this reference.  At all times relevant to this case, the Brendels' historic home (the "Major Ernest B. Thralls House" or "Thralls House") was eligible for listing in the National Register.

The provisions of the National Historic Preservation Act expressly apply to state mining regulatory programs and mining permits issued pursuant to the federal Surface Mining Conservation and Reclamation Act ("SMCRA") and its implementing regulations at 30 C.F.R. Part 773**.**   30 C.F.R. Part 773, "Requirements for permits and permit processing" states at Section 773.5:

Regulatory coordination with requirements under other laws.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** **-** 3

> Each regulatory program <u>shall</u>, to avoid duplication, <u>provide for the coordination of review and issuance of permits</u> for surface coal mining and reclamation operations <u>with applicable requirements of</u> the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 et seq.); the Fish and Wildlife Coordination Act, as amended (16 U.S.C. 661 et seq.); the Migratory Bird Treaty Act of 1918, as amended (16 U.S.C. 703 et seq.); <u>The National Historic Preservation Act of 1966, as amended (16 U.S.C. 470 et seq.)</u>; the Bald Eagle Protection Act, as amended (16 U.S.C. 668a); for Federal programs only, the Archeological and Historic Preservation Act of 1974 (16 U.S.C. 469 et seq.); and the Archaeological Resources Protection Act of 1979 (16 U.S.C. 470aa et seq.) where Federal and Indian lands covered by that Act are involved.

30 C.F.R. § 773.5 (July 1, 2003)(52 FR 4262, Feb. 10, 1987; Redesignated at 65 FR 79663, Dec. 19, 2000)(emphasis added).

The Thralls House and related structures were nominated to the U.S. Department of Interior, Keeper of the National Register by the Pennsylvania Historical and Museum Commission for listing in the National Register. In at least two separate written communications, dated April 27, 1999 and May 11, 1999, Consol, by and through legal counsel, submitted written comments to the Keeper in opposition to the nomination of the Brendels' historic buildings and structures, claiming the right to object under the NHPA and the Keeper's regulations as an "owner." Copies of those correspondences accompany this motion as within Exhibits 3A and 3B, and are incorporated herein by this reference. Consol asserted ownership of the Ernest Thralls House based on Consol's asserted ownership of unidentified subsurface mineral estates and an accompanying "support estate" under Pennsylvania law.[1] The Brendels own the majority of the subsurface mineral, oil and gas rights existing on the property. See Brendels' Tax Records and Deed, Exhibits 3A and 3B.

---

[1] See also, Exhibit 4B, April 23, 1999 letter from Consol's counsel, Henry Ingram, to Brenda Barrett of the Pennsylvania State Historic Preservation Office ("PA SHPO") of the Pennsylvania Historical and Museum Commission ("PHMC"), Bureau of Historic Preservation ("BHP"), with the Federal Register notice attached thereto. Among other things, these exhibits demonstrate that despite Consol's claims to the contrary, Consol had actual notice and participated in commenting to the Secretary on the nomination of the Thralls House.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** - 4

The Keeper responded in writing to Consol's counsel in a response letter dated May 14, 1999[2], stating that Consol did not have an fee ownership interest in the historic buildings and included an explicit notification to Consol of the available administrative remedy to petition to delist the Ernest Thralls House if Consol did not agree with the Keeper's initial conclusion:

> If you believe that this listing was made in error, <u>you have an administrative remedy under National Historic Preservation Act regulations at 60.15 to petition the Keeper to remove the property from the National Register</u>. [emphasis added].

See Exhibit 4A (at p.13), for a copy of the Keeper's May 14, 1999 letter, incorporated herein by this reference.

---

[2]"We have considered your concerns, however, we believe that <u>the type of property interest you describe does not fall within the definition of an owner within the meaning of our regulations and the National Historic Preservation Act of 1966</u>." (emphasis added).

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS - 5**

The Brendels' historic buildings were formally placed in the National Register by the National Park Service, Keeper of the National Register, on May 12, 1999. Consol has never sought to exercise the administrative remedy of petitioning the Keeper to delist the property. Consol undermined the Brendels' historic home utilizing the "full extraction" method of coal mining, also known as "long-walling" beginning in November, 2000. The pre- and after-effects of the mining have been ongoing and cumulative. Consol has removed all of the coal that it owned underneath the Brendels' historic home during the pendency of this litigation, and as a result, Consol no longer has any ownership interest of any kind below the Brendels' historic home.[3] Meanwhile the Brendels' home has been severely damaged from mining subsidence and continues to suffer from ongoing damage, all the results of Consol's illegal undermining activity, while the Brendels still await justice and relief in this matter after being subjected to extreme delays. **After over five years -- sixty-two months, and counting, to be exact -- the Brendels' historic property still remains severely damaged and adversely affected from subsidence, now including infestation from health-threatening and property-damaging black mold.**

**THE STANDARDS FOR DECIDING F.R.Civ.P. 12(b) MOTIONS TO DISMISS**

The legal standard that must be applied in ruling on a motion to dismiss presented under F.R.Civ.P. 12(b), requires that the burden is on the movant to show that no claim has been stated.

---

[3] It is worth noting here that as the Brendels' Second Amended Answer, Counterclaims, and Third-Party Complaint sets forth, prior to undertaking the undermining of the Brendels' historic property, Consol – with OSMRE complicity – unilaterally cancelled the scheduled pre-mining NHPA Section 106 consultation process on the very eve of its first scheduled consultation meeting in October 2000, and thereby prevented the Brendels, the PA SHPO, and the President's Advisory Council on Historic Preservation from consulting with OSMRE, PA DEP and Consol on avoiding adverse effects to the historic structures or in properly and effectively mitigating any such adverse effects.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS – 6**

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3rd Cir. 1991).  The court is not to determine whether the plaintiff will ultimately prevail, but rather, whether the plaintiff can prove any sets of facts to support his claim.  Hishon v. Spalding, 467 U.S. 69, 73 (1984).  As the Supreme Court made clear in reiterating the rule in Conley v. Gibson, 355 U.S. 41 (1957), "...a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46.  In other words, if the plaintiff can prove no set of facts in support of his claim, the complaint should be dismissed.  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3rd Cir. 1994)(vacating district court order of dismissal, citing Conley v. Gibson, and D.P. Enters., Inc. v. Bucks County Comunity College, 725 F.2d 943, 944 (3rd Cir. 1984)).

**CONSOL'S DELISTING CLAIM MUST BE DISMISSED FOR <u>LACK OF SUBJECT MATTER JURIDICTION</u> – CONSOL FAILED TO EXHAUST ADMINISTRATIVE REMEDIES**

Consol's inexcusable failure to exhaust the explicit and available administrative remedy of an administrative petition to the Secretary of the Interior, Office of the Keeper of the National Register, pursuant to 36 C.F.R. 60.15, to "de-list" the National Register-listed Ernest Thralls House, deprives this Court of subject matter juridiction.  See White v. Shull, 520 F.Supp. 11 (S.D.N.Y. 1981)(<u>lack of subject matter jurisdiction over suit for failure of plaintiff to first petition Keeper to de-list</u>).  Consol is just trying through its complaint to involve this Court in a cynical, calculated gimmick to try to enable Consol to avoid full responsibility for compensation to the Brendels' for the restoration of their National Register-listed home in accordance with the Secretary of the Interior's standards,

and as expressly required thereby under federal and state mining laws.

Consol's "de-listing" claim must be dismissed by this Court as a matter of law for lack of subject matter jurisdiction for failure to exhaust administrative remedies. See Exhibit 4A at p.13.[4]

**IF THE VALIDITY OF THE SECRETARY OF INTERIOR'S "OWNER" DEFINITION REGULATION IS TO BE CHALLENGED, CONSOL MUST FIRST EXHAUST ITS ADMINISTRATIVE REMEDIES – THEREFORE CONSOL'S DUE PROCESS CLAIMS MUST ALSO BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

"Where a plaintiff is challenging the validity of a regulation, the rule of exhaustion normally requires that the plaintiff petition the agency for rulemaking....In this case, there is no question that plaintiffs failed to exhaust their administrative remedies because they never petitioned [the agency] for rulemaking." Skubel v. Fuoroli, 113 F.3d 330, 334 (3rd Cir. 1997)(citing South Hills Health System v. Bowen, 864 F.2d 1084 (3rd Cir. 1988)).

In South Hills Health, the Third Circuit considered a challenge nearly identical in concept to the allegations made by Plaintiff in this case, including a claim of a violation of the Fifth Amendment's guarantee of due process. In that case, there were objections to a longstanding regulation and the implementation of the regulation by the responsible federal agency in the exercise of its authority. The Third Circuit remanded the case back to the District Court for the Western District of Pennsylvania with instructions that the matter be dismissed because of the Plaintiff-Appellants' failure to exhaust its administrative remedies pursuant to the right to petition the agency Secretary for rulemaking.

In this case, however, the question of whether the agency properly exercised its discretion is not properly before us. As this Court stated in Consolidation Coal Co. v. Donovan, 656 F.2d 910

---

[4] "If you believe that this listing was made in error, you have an administrative remedy under National Historic Preservation Act regulations at 60.15 to petition the Keeper to remove the property from the National Register." (emphasis added).

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS - 8**

(3rd Cir. 1981):

> [T]he rule of Geller has been applied *only when the agency has finally acted to deny the petition for reconsideration or further rulemaking...*". Id. at 915 (emphasis added). The threshold obstacle to our consideration of South Hills' argument in this case is that it has not filed a petition for rulemaking on ownership with the Secretary of the Interior. We have examined South Hills' complaint to the district court and find that it is not a petition for review of an order by HHS refusing to reexamine the continuing validity of [its] rule, *see* Geller, 610 F.2d at 978, nor is it an appeal from a denial of a petition to eliminate specific regulations on demonstrable grounds of invalidity, *see* Geller, 610 F.2d at 978 [citation omitted]. Instead, South Hills' complaint states that it is appealing from a final agency decision by the Secretary to [act in accordance with the procedures] under the regulation. Nothing in the record indicates that [South Hills, et al.] have made any request related to rulemaking to the Secretary.

South Hills at 1095.

Furthermore, the Supreme Court has also made it clear that if the available administrative proceeding might leave no remnant constitutional question for decision by a court, the administrative remedy plainly should be pursued:

> If, as in Aircraft & Diesel Equipment Corp. v. Hirsh, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, and Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933, an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.

Public Utilities Commission of Cal. v. United States, 355 U.S. 534, 539-540 *rehearing denied* 356 U.S. 925 (1958)(emphasis added).

In Allen, *supra*, the constitutional questions presented included a claim of a violation of the Fifth Amendment through the deprivation of property without due process of law, as in the present case. *See* Allen at 553 & n22 ("We have noted the other arguments submitted by appellee concerning the interpretation and constitutionality of the statute but it would be premature action on our part to rule upon these until after the required administrative procedures have been exhausted."). The Court in Allen dismissed the claim and required the plaintiff to first exhaust its administrative

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS – 9**

remedies. In this case, likewise, the Court must dismiss – for lack of subject matter jurisdiction – Consol's due process claim which is based on its bogus assertion as an "owner" of the Brendels' historic house and related structures.

It is important to note here also that the Supreme Court has held that an administrative rule interpreting the issuing agency's own ambiguous regulation may receive substantial deference. Auer v. Robbins, 519 U.S. 461, 463 (1997). So may an interpretation of an ambiguous statute, Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-845 (1984), *rehearing denied* 468 U.S. 1227, but only when it appears that Congress delegated authority to the agency to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. United States v. Mead Corp., 533 U.S. 218, 226-227 (2003). This precisely describes the Secretary's authority under the NHPA in regard to this rule of law. See the regulatory history of the Keeper's rulemaking for the definition of "owner" in Exhibit 2 .

**ALTERNATIVELY, BECAUSE CONSOL HAS MINED OUT ITS COAL THROUGH THE FULL EXTRACTION METHOD OF "LONG-WALLING", CONSOL'S CLAIMS BASED ON AN "OWNERSHIP" INTEREST IN THE BRENDELS' HISTORIC THRALLS HOUSE, CONSOL'S COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING**

Consol never was, nor is it, an "owner" of the Brendels' home, the historic "Ernest Thralls House." The Brendels did not need Consol's permission to by the house – nor do the Brendels need Consol's permission to sell their house – nor does Consol pay the taxes on the assessed value of the Brendels' property each and every year as the Brendels have since they've owned their home. In reviewing the facts as evidenced on the face of the National Register nomination form (see Exhibit 5), the following facts are relevant and pertinent to further recognize Consol's lack of standing to bring its suit against the Keeper and the Brendels:

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS  –  10**

First of all, the "Classification" on the National Register nomination form for the historic property – the "Ernest Thralls House" – identifies it by category as only "building(s)".  Also noteworthy, the "Ernest Thralls House" is not identified as a "site." (emphasis added).

Second, the "Number of Resources within Property" lists 6 "Contributing" "buildings", 3 "Contributing" and 1 "Noncontributing" "structures".  Again, it does not list any "sites." (emphasis added).

Third, the "Applicable National Register Criteria" identified is only one: "Criteria C":

> "Property embodies the distinctive characteristics of a type, period, or method of construction or represents the work of a master, or possesses high artistic values, or represents a significant and distinguishable entity whose components lack individual distinction."

Fourth, for the "Areas of Significance" only one is listed: "Architecture."  Again, clearly the subject of the nomination is the structure owned only by the Brendels.  Consol has no ownership interest of any kind in the Brendels' home.

Fifth, the narrative description of the property (for Sec. 7 of the nom form) is described in the opening paragraph as:

> "The Ernest Thralls House, approximately two miles south of the town of Spraggs on State Route 218 in Wayne Township, is located near the intersection of Forney Hollow Road (TR 522) and Old Church Lane (TR 353) in southern Greene County. This nomination consists of a nine-acre portion of the 133-acre Thralls property. The nine-acre portion contains the Thralls complex and its immediate setting birdered on the east and west by steep hills and intersected by Roberts Run. The complex has nine contributing buildings and structures including a circa 1939/1940 Spanish Revival house, a tenant house, three sheds, and a horse barn. Contributing structures on the property are: a simple concrete highway bridge over Roberts Run, a stone and brick exterior fireplace/grille, a split rail fence with stone piers around the semicircular entrance drive to the house, and a stone pier, the last being the remainder of a part of a simple stone footbridge over the tributary stream that was built at the same time as the house. The Thralls House, despite some minor changes, continues to retain much of its distinctive Spanish Revival detailing, setting, and outbuildings."

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS – 11**

Lastly, Section 10 ("Geographical Data") is completed with the "Verbal Boundary Description" required subsection, "Boundary Justification", which was submitted and reads as follows – clearly not including anything that Consol could legitimately claim any ownership interest in:

> "This boundary includes the Thralls House and its historically associated outbuildings and immediate nine acres of ground which are connected to its architectural significance. The remaining ground is excluded from this nomination since it does not relate to the architectural development of the house and outbuildings."

When those facts are coupled with Pennsylvania real property law, it is beyond any doubt that Consol does not have, nor did it ever have, a shared ownership of the Brendels' home, the historic Ernest Thralls House. It is settled law in Pennsylvania that a lease of coal in place – such as what occurred prior to the Brendels property when the rights to the Pittsburgh Seam of coal was transferred – until such time as all the available merchantable coal shall have been mined and removed – is a sale of an estate in fee simple. This conclusion is supported by the decisions of the Supreme Court of Pennsylvania in Lillibridge v. Coal Co., 143 Pa. 293, 22 A. 1035; Kingsley et al. v. Hillside Coal & I. Co., 144 Pa. 613, 23 A. 250; Sanderson v. Scranton, 105 Pa. 469; Hosack v. Crill, 18 Pa. Superior Ct. 90; Webber v. Vogel, 189 Pa. 156, 42 A. 4; Gilberton Fuels, Inc. v. P. & R.C. & I. Co., 342 Pa. 192, 20 A. 217, and many other cases. In the Sanderson case Supreme Court of Pennsylvania said, "A severance of the surface from the underlying strata" of coal, by its lease until no coal remains "created a divided ownership in these distinct portions of the land." Smith v. Glen Alden Coal Company et al., 347 Pa. 290, 299, 32 A.2d 227, 232 (Pa. 1943)(emphasis added).

Furthermore, it is well recognized in Pennsylvania that there may be three estates in land, namely, coal, surface, and right of support, so that one person may own the coal, another the surface, and the third the right of support: Charnetski v. Miners Mills Coal Min. Co., 270 Pa. 459. "In the

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** – 12

absence of express waiver . . . [or one clearly implied] the grantee of minerals takes the estate subject to the burden of surface support." <u>Penman v. Jones</u>, 256 Pa. 416, 422, 100 A. 1043. "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." <u>Graff v. Scranton Coal Co.</u>, 244 Pa. 592, 91 A. 508. This servitude of support is an estate in land, sometimes referred to in this commonwealth as "the third estate". See <u>Penn Coal Co. v. Mahon</u>, 260 U.S. 393, and Fifth Mut. Bldg. Soc. Appeal, 317 Pa. 161, at 168, 176 A. 494.  <u>Glen Alden</u>, 347 Pa. at 299, 32 A.2d at 234.

Consol is (or *was* – see the Brendels' mootness argument, *infra*.), as owner of the Pittsburgh seam of coal, a fee simple owner of just that coal and certain mining rights which are in the nature of easements and the right to subside.  *See* <u>Hoge v. U.S. Steel</u>, 468 A. 2d 1830 (Pa. Sup. Ct. 1983); *and see*, 36 C.F.R. 60.3 definition of "owner" explicitly excludes easement holders as "owners" under the NHPA.[5] Regardless, the Brendels' deed expressly excludes the coal interest that may be owned by Consol, and the Brendels own not only the surface estate from which the Thralls House was nominated and listed in the National Register, the Brendels also own the oil and gas and the majority of the remaining subsurface fee estates.  See Exhibits 3A and 3B.

The bottom line is, any argument that Consol had or has an ownership interest in any of the surface of the Brendels' property or its fixtures is belied by the fact that such is impossible, even under Pennsylvania's unique recognition of three separate fee estates in land.  Consol has no "ownership" stake in the Brendels' house, and as a matter of law Consol's aspirations and groundless claims based on "ownership" and due process must be dismissed for lack of standing.  See <u>Warth v.

---

[5]"Owner or owners does not include individuals, partnerships, corporations or public agencies holding easements or less than fee interests (including leaseholds) of any nature." 36 C.F.R. 60.3.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** – 13

Seldin, 422 U.S. 490, 498-500 (1975); Baker v. Carr, 369 U.S. 186, 204 (1962).[6]

**ALTERNATIVELY, BECAUSE CONSOL HAS MINED OUT ITS COAL THROUGH THE FULL EXTRACTION METHOD OF "LONG-WALLING", CONSOL'S CLAIMS BASED ON AN "OWNERSHIP" INTEREST IN THE BRENDELS' HISTORIC THRALLS HOUSE ARE MOOT**

The preceding section on lack of standing is incorporated herein by this reference. Article III of the U.S. Constitution allows Federal courts to adjudicate only "live cases or controversies." Whether an actual justiciable controversy exists is determined when the court acts, not when the action is commenced. Bowen v. Kizer, 485 U.S. 386 (1988)(per curiam). Accordingly, an action may become moot after an action is filed. Id. Mootness "ousts the jurisdiction of the federal courts and requires dismissal of the case." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 335 (1980). Because Consol has removed the coal through the full extraction method of mining, commonly known as "long-walling," even if Consol had a fee owner's legal interest in the Ernest Thralls House, Consol could not possibly be found to be an "owner." Consol's claims are now moot, and there is no relief that could be effectively granted, so Consol's claims based on "ownership" and due process must be dismissed.

**CONSOL <u>DOES NOT HAVE CLEAN HANDS</u> TO ASSERT ITS DE-LISTING CLAIM**

---

[6]It is important to note here that despite Consol's assertions of lack of due process – regardless of whether Consol had an "ownership" interest in the Brednels' home – <u>Consol had actual notice of the pending nomination and actually submitted two sets of comments to the Keeper, and received a written response</u>, prior to the Keeper's decision to list the Ernest Thralls House in the National Register on May 19, 1999. See Exhibit 4, which is incorporated herein by this reference.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS – 14**

It is axiomatic that "one who seeks equity must do equity." Consol's unilateral actions in undermining the Brendels' historic house and causing substantial damage from the consequential subsidence caused the damage – especially since Consol and OSMRE illegally aborted the NHPA Section 106 process[7], which exists to provide the parties with the means to avoid or mitigate any adverse effects to the historic resource from undermining – demonstrate Consol's lack of clean hands. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945), *rehearing denied*, 325 U.S. 893, *petition for clarification of opinion denied*, 325 U.S. 843 (1945).[8] Furthermore, Section 110k of the NHPA, as amended in 1992, prohibits causing adverse effects to an identified National Register-eligible historic property without first completing the Section 106 consultation process in good faith. See 16 U.S.C. 470f ("Section 106"), and 16 U.S.C. 470h-2.

> Each Federal agency shall ensure that the agency will not grant a loan, loan guarantee, permit, license, or other assistance to an applicant who, with intent to avoid the requirements of section 106, has intentionally significantly adversely affected a historic property to which the grant would relate, or having legal power to prevent it, allowed such significant adverse effect to occur, unless the agency, after consultation with the Council, determines that circumstances justify granting such assistance despite the adverse effect created or permitted

---

[7] See, *e.g.*, Brendels' Second Amended Answer, Counterclaims and Third-Party Complaint at paragraphs 127-131.

[8] Misconduct justifying equity court in refusing relief because of unclean hands need not necessarily be of such nature as to be punishable as a crime or as to justify legal proceedings, but any wilful act concerning cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for refusing relief. Id. at 814-815.

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** – 15

by the applicant.  16 U.S.C. 470h-2(k).

The Section 106 duty remains constant throughout the lifetime of the undertaking. <u>Morris County Trust for Historic Preservation v. Pierce</u>, 714 F.2d 271 (3rd Cir. 1983).  Section 106 even applies to properties not determined eligible until years after the undertaking began.  <u>WATCH v. Harris</u>,  (2nd Cir. 1979).

The equitable doctrine that he who comes into equity must come with clean hands is of greater importance where suit concerns public interests as well as private interests of litigants. <u>Precision Instrument Mfg. Co.</u>, 324 U.S. at 815.   Consol should not be permitted to carry forth an action to delist the National Register-listed Ernest Thralls House based on arguments of lack of integrity of the historic property when Consol – at its own hands – has caused such severe and significant damage to the integrity of the Brendels' nationally significant historic house.

**SUMMARY**

All of Consol's claims ("ownership", due process, de-listing) must be dismissed by this Court for lack of subject matter jurisdiction because Consol failed to exhaust its administrative remedies. Furthermore, there are <u>no facts</u> supporting Consol's claim under the National Historic Preservation Act to be an <u>"owner"</u> of the Brendels' historic home, and therefore, Consol's attempt to exercise a historic property owner's right to object and thereby prevent the listing (or in this instance, to thereby cause de-listing) of this historic property in the National Register of Historic Places in the United States shall and must fail.  And <u>no such facts exist</u> to support Consol's outrageous claim of ownership of the Brendels' historic home.  Consol, therefore, does not have standing to make such a claim.

In addition, or in the alternative, Consol's claims based on "ownership" are moot because Consol has mined out its coal and therefore, does not "own" anything under the Brendels' property. Finally, Consol has unclean hands because it intentionally avoided and subverted the NHPA Section

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS  -  16**

106 process mandated by SMCRA's implementing regulations and thereby caused severe damage to the Brendels' historic Thralls House and related structures, and so as a result of Consol's unclean hands, it is estopped from seeking equitable relief from this honorable Court.

Consol is just trying through its complaint to involve this Court in a cynical, calculated gimmick to try to enable Consol to avoid full responsibility for compensation to the Brendels' for the restoration of their National Register-listed home in accordance with the Secretary of the Interior's standards, and as expressly required thereby under federal and state mining laws. Consol's claims must be dismissed.

Respectfully submitted,


<u>David C. Hook            2/10/2006</u>
David C. Hook                           Date

David C. Hook
Pa Bar ID # 27028
P.O. Box 792
Waynesburg, PA 15370
724.627.6146


Michael V. Nixon
OR Bar # 893240
P.O. Box 12539
Pittsburgh PA 15241
412.221.6261

Attorneys for Defendants Roy and Diane Brendel

**MEMORANDUM IN SUPPORT OF BRENDELS' MOTION TO DISMISS** – 17