IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOLIDATION COAL COMPANY,<br><br>      Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE,<br><br>    and<br><br>JANET SNYDER MATHEWS, individually and in her capacity as the Keeper of the National Register of Historic Places,<br><br>    and<br><br>ROY BRENDEL and DIANE BRENDEL,<br><br>      Defendants. | Civil Action No. 00-2120<br><br>**MOTION FOR COURT ORDER TO COMPEL PRODUCTION OF DOCUMENTS AND REQUIRING APPEARANCE AT DEPOSITION AND FOR SANCTIONS AND FOR CONTEMPT**<br><br><br>Filed on Behalf of Plaintiff,<br>Consolidation Coal Company<br><br><br>Counsel for Plaintiff:<br><br>Joseph A. Katarincic<br>Pa. I.D. No. 11427<br>Lauren D. Rushak, Esq.<br>Pa. I.D. No. 83728<br>Kerri L. Coriston<br>Pa.I.D. No. 89838<br><br>THORP REED & ARMSTRONG, LLP<br>One Oxford Centre<br>301 Grant Street, 14th Floor<br>Pittsburgh, PA 15219<br>(412) 394-2388 |

00687758.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSOLIDATION COAL COMPANY, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | Civil Action No. 00-2120 |
| INTERIOR, NATIONAL PARK SERVICE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JANET SNYDER MATHEWS, individually and in | ) | |
| her capacity as the Keeper of the National Register of | ) | |
| Historic Places, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROY BRENDEL and DIANE BRENDEL. | ) | |

**MOTION FOR COURT ORDER COMPELLING PRODUCTION OF
DOCUMENTS AND REQUIRING APPEARANCE AT DEPOSITION AND FOR
SANCTIONS AND FOR CONTEMPT**

Plaintiff Consolidation Coal Company ("Consol"), by undersigned counsel, files this Motion for a Court Order Compelling Production of Documents and Requiring Appearance at Deposition and for Sanctions and for Contempt.

*Introduction*

1.      Consol is compelled to bring this motion because the conduct of Defendants Roy and Diane Brendel (the "Brendels") and, particularly, their counsel David C. Hook, Esquire ("Mr. Hook") during the course of the recently held depositions on February 7-8, 2006 was unjustified, designed to impede, delay and frustrate the fair examination of the deponents and rose to the level of outrageous conduct. The Brendels and their counsel frustrated any attempt by Consol to review, copy, and examine the deponents on documents

2

which they were required to produce at their depositions. Moreover, the Brendels, at their counsel's insistence, refused outright to answer highly relevant questions.

2. Further, Diane Brendel walked out of her deposition at the prompting of Mr. Hook and without cause. Mr. Hook then announced that he would not be returning with Roy Brendel for his deposition the next day. Nonetheless, and without notification to Consol, Roy Brendel appeared at his deposition but was so uncooperative that Consol had no choice but to prematurely terminate his deposition when he continued to refuse to answer questions.

3. The Brendels' and Mr. Hook's conduct not only impeded the fair and complete discovery to which Consol is entitled but it demonstrated bad faith and a complete indifference to the intent and spirit of the Federal Rules of Civil Procedure.

*__Background__*

4. As part of discovery in this case, Consol served a Notice of Deposition on Defendant Roy Brendel which contained a subpoena duces tecum request for the production of documents and tangible things at the taking of the deposition as Exhibit A (" First Document Request"). A true and correct copy of the Notice of Deposition is attached hereto as Exhibit 1. The deposition was scheduled for Tuesday, January 17, 2006.

5. Consol further served a Notice of Deposition on Defendant Diane Brendel which contained the same subpoena duces tecum document requests served on Roy Brendel. A true and correct copy of the Notice of Deposition is attached hereto as Exhibit 2. The deposition was scheduled to commence on Wednesday, January 18, 2006.

6. On January 5, 2006, Consol served a Supplemental Notice of Deposition on Plaintiffs. See Ex.'s 3 & 4. The Supplemental Notices contained minor additions to the

subpoena duces tecum document requests ("Second Document Request") (the First Document Request and Second Document Request are referenced collectively as "Document Requests").

7. Mr. Hook objected to the dates provided for the depositions by explaining that he needed more time to compile the information that had been requested. Although it was well within Consol's rights to proceed with the deposition as planned, in an effort to assure that the Document Requests were fully and completely complied with, the depositions were postponed until February 7, 2006 for Diane Brendel and February 8, 2006 for Roy Brendel. See January 13, 2006 Correspondence from Joseph A. Katarincic, Esquire ("Mr. Katarincic") to Hook, Ex. 5, and Correspondence from Hook to Katarincic, Ex. 6.

8. Because the Brendels now had a full three additional weeks to compile the requested documents, Consol's counsel asked to review the documents one week prior to the deposition, offering to pick the documents up at Mr. Hook's and the Brendels' convenience. See January 19, 2006 letter from Katarincic to Hook, Ex. 7. Although this is a customary practice, Mr. Hook never responded to Consol's request. If Mr. Hook had followed this customary procedure and honored the request it would have obviated any problem, or if a problem had arisen, Consol would not have proceeded with the depositions.

9. To date the Brendels have never objected to the Notice of Depositions or Documents Requests-- either in scope, nature, relevancy, or for any other reason. At all times prior to the depositions, Consol operated under the presumption that the Brendels and Mr. Hook would fully comply with their discovery obligations.

***The Brendels' Counsel Attempts to Impose Restrictive and Unwarranted "Ground Rules" on Consol's Ability to Review the Requested Documents***

10. Accompanied by Mr. Hook, Ms. Brendel appeared for her deposition with seven boxes of documents purportedly containing original documents compiled in response to the Document Requests (the "Boxes"). See Dep. of Diane Brendel, pp. 8-9 [Ex. 8].

11. The Court Reporter marked each of the 7 boxes as Exhibits to the deposition and he became the legal custodian of the Boxes. See Dep. of Diane Brendel, pp. 14-15 [Ex. 8].

12. In accordance with the procedures outlined in Rule 34 of the Federal Rules,[1] Consol began the deposition by asking Ms. Brendel to identify the specific documents she had brought in response to each separate request.

13. Mr. Hook instructed the witness to not respond to any of these questions:

> MR. KATARINCIC: If you want, I'll ask her to give me everything you're producing in response to paragraph 1.
>
> MR. HOOK: And I'll tell her not to respond.
>
> MR. KATARINCIC: You're serious?
>
> MR. HOOK: Yes.
>
> MR. KATARINCIC: Alright, I'll ask her. What documents did you produce here today in response to paragraph 1, Exhibit A, of your notice?
>
> MR. HOOK: Don't respond.
>
> Q. Do you know, ma'am?

---

[1] Rule 34 provides that a party is required to serve a written response to a request for production which states, with respect to each item or category, that "inspection and related activities will be permitted as requested unless the request is objected to." F.R.C.P. 34. Rule 30 of the Federal Rules provides that the procedure provided by Rule 34 governs documents produced during a deposition.

> MR. HOOK: Don't respond to that question.
>
> Q.  Do you know what documents you produced, that's all, in response to paragraph 1?
>
> MR. HOOK: Don't respond to that question.

<u>See</u> Dep. of Diane Brendel, pp. 10-11 [Ex. 8][2].

14. Although it was well within Consol's rights to ask such questions, heeding her attorney's inappropriate advice and unfounded assertion of work-product, Ms. Brendel refused to identify or even respond to any of the questions posed by Consol with respect to the documents contained in the Boxes.

15. In light of Ms. Brendel's refusal, at her counsel's insistence, to identify the documents produced in response to each request, Consol took the next appropriate course and began to physically inspect the contents of the boxes. As such, co-counsel for Consol, Lauren Rushak, Esquire, reviewed the contents of all of the boxes and made certain documents available to Mr. Katarincic for use in questioning Ms. Brendel.

---

[2] Mr. Hook stated that his objection was based on his view that the question asked for mental impressions and legal conclusions and was covered by the work-product privilege, however such a basis was unfounded and certainly did not apply to the subject matter. She had already testified as follows:

> Q. Let me show you two documents, and we'll mark these as Exhibit 1 and 1A, these documents asking you to bring certain other documents with you here today… Have you gathered up and delivered here today any documents in response to that?
>
> A. Yes….
>
> Q. So there's seven containers. Did you assemble those?
>
> A. My husband and I did.

Thus, it was absolutely clear to Mr. Hook that his clients had assembled the documents in response to each category requested and could identify which documents applied to which requests. Therefore, it was wholly improper for him to make objections which he knew were entirely baseless. See Dep. of Diane Brendel, pp. 8-11 [Ex. 8].

16. Again, however, Mr. Hook objected to Consol's review of the documents, stating without any apparent reason that he was concerned that the documents in the Boxes would be "mixed up." <u>See</u> Dep. of Diane Brendel, pp. 29-30 [Ex. 9]. Based on his apparent fear that the documents would become disorganized (ironically he refused to allow Ms. Brendel to even state how they were organized), Mr. Hook demanded that no files be removed from the Boxes. Once again, Consol was thwarted in its attempt to fully and efficiently review the Boxes and question Ms. Brendel as to their contents.

17. Mr. Hook's repeated attempts to frustrate review of the Boxes continued throughout the deposition. At one point, Mr. Hook demanded that the Boxes not be reviewed while he and Ms. Brendel were at lunch. <u>See</u> Dep. of Diane Brendel, pp. 75-78 [Ex. 10]. However, Rule 34 contains no requirement that the party producing documents be present during inspection. Moreover, review of the documents during the break was more than warranted given that all previous attempts to review the documents in Mr. Hook's presence were met with extreme resistance. Accordingly and well within its rights, Consol, through its counsel, reviewed the contents of the Boxes during the lunch recess in order to segregate documents for questioning when the deposition resumed.

18. After lunch Mr. Hook was even less cooperative, refusing to allow Consol to copy <u>any</u> of the contents of the Boxes, stating that the contents were "unique family documents." <u>See</u> Dep. of Diane Brendel, pp. 78-79 [Ex. 10]; pp. 105- 112 [Ex. 11].

19. Mr. Hook's refusal to allow Consol to copy the contents of the Boxes is egregious given that Rule 34 expressly allows a requesting party—namely, Consol—to "inspect <u>and copy</u>" any documents so designated. F.R.C.P. 34(a) (emphasis added). Further, if the Brendels and Mr. Hook were truly concerned about damage to the Boxes or

that the documents would become disorganized, they could have easily produced a set of copies at the deposition (or a week prior thereto, as requested).

20. Instead, Mr. Hook repeatedly stated that Consol's request to copy the Boxes violated certain "ground rules" (which apparently forbid copying). See Dep. of Diane Brendel, pp. 106-108 [Ex. 11]. Consol never agreed to any such "ground rules." In fact, the only obvious purpose for these "ground rules" would be to frustrate any reasonable opportunity Consol might have to review the documents and question deponents on them.

21. Their conduct is even more egregious given that Consol behaved reasonably at all times and even offered to have the documents copied overnight:

> MR. KATARINCIC: Then leave them here, I'll copy them overnight.
>
> MR. HOOK: Mr. Katarincic, I'm not going to leave them here.
>
> MR. KATARINCIC: Do it overnight, and when Mr. Brendel comes back tomorrow, they'll be here.
>
> MR. HOOK: I'm sorry, Mr. Katarincic, I simply don't trust you. . .

See Dep. of Diane Brendel, pp. 111-112 [Ex. 11].

22. Moreover, Mr. Hook was advised that the court reporter was the custodian of the Boxes after they were identified in the record:

> MR. KATARINCIC: Nobody is hijacking anything. They're (the documents) under the custody of the reporter. He has a fiduciary duty to the Court, not to you or to me.

See Dep. of Diane Brendel, p. 110 [Ex. 11]. Naturally, Mr. Hook disagreed.

23. At this point it became apparent to Consol that Mr. Hook was not going to produce the relevant documents until he had heard his clients' testimony. Consol can only assume, therefore, that the documents are somehow contradictory to the Brendels' claims.

### *Mr. Hook Abruptly Ends the Deposition After Instructing Ms. Brendel to Not Respond to Relevant Questioning*

24. Mr. Hook's disruptive behavior carried over through much of Consol's questioning of Ms. Brendel. For instance, Ms Brendel was asked to describe certain aspects of her home which led to the home's designation on the National Registry, *i.e.*, the key issue in this case. Mr. Hook independently deemed certain of these questions "inane" and for that reason instructed Ms. Brendel to not answer:

> Q. How about the intricate ironwork, I believe you said, explain that, please.
>
> A. What do you want me to explain?
>
> Q. What is intricate about it?
>
> MR. HOOK: What is the relevance of these questions, Mr. Katarincic?
>
> MR. KATARINCIC: I don't have to explain it to you.
>
> MR. HOOK: Then I'm going to instruct her not to answer. These are not eliciting facts that are in any way relevant to this case. . . .So move on.

See Dep. of Diane Brendel, pp. 44-46 [Ex. 12].

25. Mr. Hook then proceeded to criticize certain of counsel's questions, stating "[t]hat's the worst question I have ever heard. Try to make it a nice question that anybody could understand." See Dep. of Diane Brendel, pp. 63-64 [Ex. 13]. Certainly a properly-worded objection would have been more appropriate under the circumstances.

26. Several times Mr. Hook improperly coached the testimony of Ms Brendel with speaking objections, although such objections are universally condemned and expressly prohibited by Rule 30(d). See Dep. of Diane Brendel, pp. 46, 49, 58, 80-81, 84-85, 95-96 [Ex. 10, 12 & 13].

27. Consol thereafter properly asked Ms. Brendel if it was not a fact that the Brendels had demanded the figure of $3 million dollars from Consol, the Brendels having claimed in this action that a defendant, Mr. Hoffman, had slandered them by such a statement. Ms. Brendel denied that the $3 million dollars was a demand:

> A. No, it's not true. We were asked by the coal company to find out how much it would cost to rebuild our house. We spent a considerable amount of money hiring experts to find out a figure. We were answering the question that Consol asked us. We weren't demanding anything.

See Dep. of Diane Brendel, pp. 98-99 [Ex. 11].

28. When Consol tried to ascertain what actually comprised the disputed $3 million, Mr. Hook again and without any basis instructed Ms. Brendel not to answer:

> Q. What all made up the $3 million?
>
> MR. HOOK: She's answered that.
>
> MR. KATARINCIC: No, she has not.
>
> MR. HOOK: Yes, she has.
>
> MR. KATARINCIC: Would you please answer, ma'am?
>
> MR. HOOK: Don't answer.
>
> Q. Break down the $3 million and what made it up.
>
> MR. HOOK: Don't answer. She's already broken it down to you.

See Dep. of Diane Brendel, pp. 104-105 [Ex. 11].

29. Even a cursory review of the deposition reveals that Mr. Hook's objection was entirely unwarranted because Ms. Brendel had <u>never</u> fully accounted for the $3 million demand. In light of Ms. Brendel's testimony earlier in the deposition that she and her husband would not be paying any of Mr. Hook's legal fees, it seems apparent that the only

reasonable explanation for Mr. Hook's refusal to allow Ms. Brendel to testify about the source of the $3 million dollar demand would be that it improperly includes those fees.

30. Consol persisted in its attempt to have Ms. Brendel quantify the $3 million figure. In response, Mr. Hook abruptly and without justification terminated the deposition:

> MR. KATARINCIC: I just want to know what made up the $3 million.
>
> MR. HOOK: We're done. On the record, I'd like somebody sent up to pick up these boxes.

See Dep. of Diane Brendel, p. 106 [Ex. 11].

31. There was no proper reason for Mr. Hook to object to the appropriate questions posed by Consol's counsel. There was even less reason to terminate the deposition, depriving Consol of its opportunity to further depose the witness.

32. After inappropriately terminating the deposition Mr. Hook went one step further and threatened that he and Mr. Brendel would not be present the next day for Mr. Brendel's appropriately noticed deposition.

> MR. KATARINCIC: We'll look for you tomorrow again.
>
> MR. HOOK: We won't be here.

See Dep. of Diane Brendel, p. 108 [Ex. 11].

33. Further, although the Court Reporter was the proper custodian of the Boxes and indicated so on the record, Mr. Hook left the deposition of Ms. Brendel with the Boxes in tow-- without allowing Consol to copy their contents and without allowing Ms. Brendel to answer numerous relevant questions. See Dep. of Diane Brendel, pp. 105-112 [Ex. 11].

34. The next day, despite the fact that Mr. Hook had previously informed Consol's counsel that he and Mr. Brendel would not appear at Mr. Brendel's deposition, Mr. Hook and Mr. Brendel nonetheless appeared. In further demonstration of his bad faith,

Mr. Hook never informed Consol's counsel prior to the deposition that he and Mr. Brendel did indeed plan to show up, either by voicemail, email or any other communication.

### *Roy Brendel Refuses to Produce and/or Answer Any Questions About the Boxes*

35. The blatant discovery violations continued in the deposition of Mr. Brendel. Setting a tone for the entire deposition, Roy Brendel appeared without any documents in response to the Document Requests.

36. Upon persistent questioning, Mr. Brendel finally inadvertently revealed that the relevant Boxes were located in Mr. Hook's car – which was in fact located in the very same building as the deposition. See Dep. of Roy Brendel, p. 57 [Ex. 14]. Mr. Hook stated on the record that "until we agree on a method for addressing the documents, they're not going to be brought into this office." Id.

37. With the boxes purportedly "secure" in Mr. Hook's car, Mr. Brendel proceeded to refuse to respond to any questions about the contents of the Boxes or any subjects which remotely dealt with the documents contained in the Boxes.

38. For instance, Mr. Brendel refused to identify any documents which he had compiled in response to any of the Document Requests.

> Q. [D]id you search around your house or office or wherever to see what you had within these categories of Exhibit A?
>
> A. My lawyer has taken care of all of those type things. I've got enough to deal with.
>
> Q. Did you or did you not is all I'm asking? If your answer is no, tell me. If your answer is yes, tell me. Did you search for these documents?
>
> A. My answer is my lawyer is handling all that.

See Dep. of Roy Brendel, pp. 62-63 [Ex. 14].

39. Mr. Brendel further refused to state whether he was unable to locate any documents requested by Consol. See Dep. of Roy Brendel, pp. 63-64 [Ex. 14].

40. In perhaps the most bizarre non-response to questioning, Mr. Brendel refused to even admit that the Boxes were not in the room-- although their absence was obvious and he had previously admitted that they were in Mr. Hook's car. See Dep. of Roy Brendel, pp. 67-68 [Ex. 15].

41. In the event that Mr. Brendel endeavored to respond to a question, as with Ms. Brendel's deposition, Mr. Hook often improperly coached the response through the use of speaking objections. See Dep. of Roy Brendel, pp. 30-38, 48-49, 50-51 & 54 [Ex.'s 16 & 17].

42. Given Mr. Brendel's failure to produce any documents and wholesale refusal to substantively answer crucial and highly relevant questions, Consol had no choice but to prematurely terminate the deposition. See Dep. of Roy Brendel, pp. 68-69 [Ex. 15].

***Consol is Entitled to an Order of Court Compelling the Production of Documents***

43. Pursuant to Rule 37 of the Federal Rules, Consol is entitled to an Order compelling the Brendels to produce the documents previously requested and purportedly contained in the Boxes.

44. Consol merely seeks to inspect and copy the documents which were properly requested. Of course, it also seeks to examine the Brendels on their contents. The Brendels never objected to these Documents Requests. However, the Brendels are apparently operating under the belief that they are able to impose restrictive and unreasonable "ground rules" to both production of documents and examination of the Brendels on them. In this regard, the Brendels and their counsel have evidenced a complete disdain for this Court's procedure.

45. Accordingly, Consol requests that this Court Order the Brendels to produce the requested documents, for copying at Consol's convenience, within fifteen days.

### *Consol is Entitled to Re-Depose Diane and Roy Brendel in the Presence of a Special Master*

46. The Brendels' conduct throughout their depositions clearly impeded the ability of Consol to fully and adequately depose them.

47. Pursuant to Rule 30(d)(2), this Court may allow additional time to depose a party where the deponent "impedes or delays the examination." F.R.C.P. 30(d)(2).

48. Consol's ability to depose Diane Brendel was unfairly limited by her conduct and the conduct of counsel in refusing to allow proper inspection of the Boxes and refusal to answer crucial lines of questioning about the Boxes. Moreover, the very fact that Mr. Hook, without cause and in violation of Consol's rights, prematurely terminated Ms. Brendel's deposition is reason enough to permit another full day of questioning.

49. Further, Roy Brendel appeared at his deposition without any documents responsive to the Document Requests although such requests were properly served and never objected to. He then proceeded to exacerbate the prejudice to Consol by refusing to answer highly relevant questions. Given Mr. Brendel's complete failure to cooperate, Consol had no choice but to prematurely terminate his deposition.

50. Consol is entitled to another full day of questioning for both Diane and Roy Brendel given the Brendels' conduct during their previous depositions. Consol requests that this Court order the Brendels to appear for their depositions within fifteen days of production of documents responsive to the Document Requests.

51. Further, given Mr. Hook's disruptive and inappropriate behavior, Consol requests that this Court appoint a Special Master to be present during the depositions.

### *Consol is Entitled to Sanctions*

52. Because of the Brendels' and opposing counsel's conduct, Consol and its counsel wasted two full days on depositions which garnered practically no useful information, not to mention the days of preparation that led up to the depositions. Furthermore, Consol has been forced to file this pleading.

53. Further, Consol is <u>still</u> not in possession of the documents it properly requested and which are crucial to this action. Instead, the Brendels' counsel continues to refuse production until Consol agrees to unwarranted and baseless "ground rules."

54. Rule 30(d)(3) provides that where a fair examination is frustrated by the conduct of a deponent, the Court may award reasonable costs and attorney's fees to the deposing party. F.R.C.P. 30(d)(3). Moreover, Rule 37(d) permits this Court to sanction the Brendels for their failure to cooperate in discovery.

55. Because of the Brendels' and opposing counsel's bad faith actions throughout the two days of depositions, Consol is entitled to be awarded reasonable costs and attorneys' fees in an amount to be determined, but at least equal to the costs and fees incurred in preparing for and conducting the Brendels' depositions and in preparing this pleading. Consol will submit an affidavit of fees and costs to this Court, at which time a separate determination may be made.

### *Roy Brendel Should Be Held in Civil Contempt of Court*

56. At his deposition, Roy Brendel demonstrated a complete disdain for his discovery obligations and this Court's procedure and processes, in appearing without any documents and refusing to answer questions pertaining to the documents.

57.     Because of his complete failure to cooperate, Consol had no choice but to prematurely terminate the deposition.

58.     Accordingly, Consol requests that this Court find Mr. Brendel in contempt and impose a fine at this Court's discretion.

WHEREFORE, for the foregoing reasons, Plaintiff, Consolidation Coal Company, respectfully requests that the Court grant its Motion for Court Order to Compel Production of Documents and Requiring Appearance at Deposition and for Sanctions and for Contempt, and issue an Order in the form attached hereto.

Dated: February 22, 2006                                  Respectfully Submitted,

*/s/ Joseph A. Katarincic, Esquire*
Joseph A. Katarincic, Esquire
PA ID No. 11427

Lauren D. Rushak, Esquire
PA ID No. 83728

Kerri L. Coriston, Esquire
PA ID No. 89838

Thorp Reed &Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
Attorneys for Plaintiff
Consolidation Coal Company

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSOLIDATION COAL COMPANY, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | Civil Action No. 00-2120 |
| INTERIOR, NATIONAL PARK SERVICE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JANET SNYDER MATHEWS, individually and in | ) | |
| her capacity as the Keeper of the National Register of | ) | |
| Historic Places, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROY BRENDEL and DIANE BRENDEL. | ) | |

**CERTIFICATION OF COUNSEL**

I hereby certify that a good faith effort has been made to resolve the discovery matters at issue and that such effort was unsuccessful.

Dated: February 22, 2006                                         Respectfully Submitted,

/s/ *Joseph A. Katarincic, Esquire*
Joseph A. Katarincic, Esquire
PA ID No. 11427
Lauren D. Rushak, Esquire
PA ID No. 83728
Kerri L. Coriston, Esquire
PA ID No. 89838

Thorp Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Motion for Court Order Compelling Production of Documents and Appearance at Deposition and for Sanctions and for Contempt** has been served by Notice of Electronic Filing pursuant to local rule of Court upon all parties.

/S/ *Joseph A. Katarincic, Esquire*