IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOLIDATION COAL COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, et al. | ) ) ) CIVIL ACTION No. 00-2120 |
| Defendants | ) |
| ROY BRENDEL and DIANE BRENDEL | ) |
| Third-Party Plaintiffs, | ) |
| v. | ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, et al. | ) |
| Third-Party Defendants | ) |

**CONSOLIDATION COAL COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FILED BY ROY AND DIANE BRENDEL**

Plaintiff, Consolidation Coal Company ("Consol") by its undersigned counsel hereby files the following Memorandum in Opposition to Motion to Dismiss Filed by Roy and Diane Brendel (the "Brendels") (the "Motion to Dismiss").

I.  **Introduction**

The National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470, *et seq.*, established the National Register of Historic Places ("NRHP" or "Register") and a mechanism whereby persons can nominate for inclusion on this list certain "historic" properties. While inclusion of a property on the NRHP is generally a non-controversial issue, Congress nevertheless recognized

00693509.DOC

that there would be situations involving multiple owners, where one of the owners might have legitimate objections to a proposed listing. Consequently, the Act provides, in relevant part, "if the **owner or owners of any private property**…**object** to such inclusion or designation, such property **shall not** be included on the National Register…until such objection is withdrawn." 16 U.S.C. § 470a (a)(6) (emphasis added).

Thus, Congress recognized that if an "owner" of "private property" objects to its inclusion on the Register "such property shall not be included." Simply put, "owners" of "property" have the right to "veto" efforts by other "owners" to cause "property" in which they have "ownership" interests to be listed on the NRHP.

The NHPA does not define who is an "owner," although the current regulations which govern the manner in which private property is to be listed on the NRHP do. They define "owner" as follows:

> "Owner or owners." The term owner or owners means those individuals, partnerships, corporations or public agencies holding fee simple title to the property. Owner or owners does not include individuals, partnerships, corporations or public agencies holding easements or less than fee interests (including leaseholds) of any nature.

36 CFR § 60.3 (k).

However, as interpreted by the federal Defendants and the Brendels in their Motion to Dismiss, Consol is not an "owner" who can "object" to the proposed listing on the NRHP of structures, admittedly owned by others, which are located over its property. In response to this interpretation, which refuses to recognize Consol's fee simple ownership interests as recognized by the Commonwealth of Pennsylvania, Consol filed this lawsuit, which: (i) seeks review of the Keeper's "final agency action" under the Administrative Procedure Act of listing on the Register structures located above, and thereby adversely affecting, its property and (ii) alleges a violation

of its federal constitutional rights, namely a refusal by the federal Defendants to recognize them as an "owner" entitled to "object" to a proposed listing.

In an improper effort to defeat Consol's right to assert these claims, the Defendant Brendels have argued through their Motion to Dismiss that: (i) this action should be dismissed because Consol lacks standing, (ii) this case is moot since Consol has completed its mining activities beneath the Brendels' property, (iii) Consol is required to exhaust allegedly available administrative remedies, and (iv) Consol allegedly lacks "clean hands." For the reasons discussed below, these claims all lack merit.

## II.  Standard of Review

The Federal Rules of Civil Procedure ("Federal Rules") are designed to ensure that actions are decided upon their merits. *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970). Once a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving its existence. *Moore's Federal Practice 3d*, at § 12.30[5] (Rel. 146-6/05). In contrast, for purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules, a trial court must accept as true all facts alleged in the complaint; must view the facts in the light most favorable to the plaintiff; and must afford plaintiff all reasonable inferences that can be drawn from the facts. *Brader v. Allegheny General Hospital*, 64 F.3d 869, 873 (3d Cir. 1995). A motion to dismiss cannot be granted unless the plaintiff would not be entitled to relief under any set of facts which it might prove in support of its complaint. *Conley v. Gibson*, 355 U.S. 41, 45 – 46 (1957); *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 199 (3d Cir. 1991); *Markowitz v Northeast Land Co., supra*; *Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 761 (3d Cir. 1974).

### III. Argument

#### A. Under Pennsylvania Law, Consol Has Standing as the Fee Simple Owner of the Mineral Rights and Support Estate Lying Beneath the Brendels' Property.

The crux of the Brendels' argument that Consol lacks standing is their contention that Consol is not the "owner" of the structures proposed for listing and, therefore, it is not an "owner" who can "object" to the proposed listing of their structures on the NRHP. This claim, of course, actually goes to the merits of Consol's claims, not its standing. In its Amended Complaint, Consol plainly alleged that it owns or controls the right to mine the Pittsburgh Seam of coal beneath the surface of the Brendels' property and that such ownership constitutes a fee simple estate. Amended Complaint, ¶¶10-11. Because these facts as alleged in Consol's Amended Complaint must be accepted as true for purposes of deciding a Rule 12(b)(6) motion, the Brendels' Motion to Dismiss should be denied for this dispositive reason. Consol has standing to assert its claims as the fee simple owner of the mineral rights and support estate underlying the Brendels' property and has clearly pleaded facts supporting such standing.

Moreover, even if this Court chooses to consider the merits of the Brendels' argument at the 12(b)(6) stage, it still is wholly without merit. Consol has never claimed to be an owner of the Brendels' structures. Instead, Consol has claimed (and the Brendels do not dispute this claim) that it is the fee simple owner of the Pittsburgh Seam of coal lying beneath the Brendels' structures and the fee simple owner of what is known, in Pennsylvania, as the support estate.

The essence of the Brendels' "standing" argument is, in reality, nothing more than a claim that the federal Defendants are free to define who is an "owner" that has a right under the NHPA to "object" to the listing of a property on the NRHP without any reference at all to the

-4-

property laws of the state where the property is located.[1]  However, this claim ignores the well settled rule that the ownership of private property and the benefits and burdens attendant to such ownership are defined not by federal law (or federal regulations) but by the law of the several states.  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1971).  *See also Acierno v. Cloutier*, 40 F.3d 597, 616 (3rd Cir. 1994) ("courts are required to turn to state and local law to determine whether the plaintiff possessed a property interest which was [affected] by the government action."); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 213 (3d Cir. 2001) ("Property interests created by state law are protected under [the Fourteenth] amendment."); *Independent Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1177 (3d Cir. 1997) ("Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.").

Therefore the issue of who is an "owner" of "property" entitled to "object" to a listing of that property on the NRHP is not determined by how the federal Defendants define who is an "owner of property," but by how the Commonwealth of Pennsylvania defines such persons.  Pennsylvania law, unlike the federal Defendants and the Brendels, recognizes that there can be multiple "owners" of fee simple estates in a single tract of real property.  As succinctly stated by the Pennsylvania Commonwealth Court in *Captline v. County of Allegheny*, 459 A.2d 1298, 1301 (1982):

---

[1]  Indeed, that the federal defendants can define "owner" so as to essentially abrogate ownership rights afforded under state law.

>   "...**Pennsylvania law recognizes three distinct estates in land which can be held in fee simple** separate and distinct from each other: the surface, the mineral rights and the right of support. *See, e.g., Smith v. Glen Arden Coal Company*, 347 Pa. 290, 32 A.2d 227 (1943) (emphasis added).

*See also Merrill v. Manufacturers Light & Heat Company*, 185 A.2d 573, 576-577 (Pa. 1962); *Pennsylvania Bank & Trust Company, Youngsville Branch v. Dickey*, 335 A.2d 483 (Pa. Super. Ct. 1975); and *Sedat, Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 645 A.2d 407 (Pa. Commw. Ct. 1994). These separate and distinct fee simple interests can, in fact, be owned by three entirely different persons or entities. *Penman v. Jones*, 256 Pa. 416 (1917).

This has been the settled common law of Pennsylvania for over a hundred years. As the Supreme Court of Pennsylvania held in *Chartiers Block Coal Co. v. Mellon*, 152 Pa. 286, 294 (1893), "a man who owned the surface [at common law] owned it to the center of the earth, while today, there may be as many different owners as there are strata...[we must] apply the law as to give each owner the right of enjoyment of his property or strata without impinging upon the right of other owners."

This ownership interest is not, as suggested by the Brendels, "in the nature of an easement." *See* Brendels' Memorandum, page 13. Instead, Consol's ownership interest is, in every respect, recognized by Pennsylvania law as a "fee simple" ownership interest in the very "property" which the Brendels seek to have listed. To suggest, as they do (and as the Keeper has concluded), that Consol does not have an "ownership" interest in the very property which was the subject of the Brendels' request to "list" their structures is completely inconsistent with state law and ignores the reality of how "property" is often titled in Western Pennsylvania. Because Consol has a fee simple estate in the mineral rights and support estate lying beneath the Brendel property, it should have been given notice of and the opportunity to veto the Brendels' efforts to

00693509.DOC

have the property listed on the NRHP. Plainly, for these separate and distinct reasons, it cannot be disputed that Consol now has standing to object to such listing and pursue its claims in this action. Accordingly, the Brendels' Motion to Dismiss should be denied.

### B. This Case is Not Moot Because the NRHP Designation Continues to Impose Burdens on Consol's Use and Enjoyment of its Estates in the Property and Has Substantially Increased Consol's Obligation to Repair the Property.

Perhaps recognizing the weakness of their argument that Consol is not an "owner" within the meaning of that term as used in the NHPA, and thus a "person" entitled to be given notice of, and the statutory "right" to veto the proposed listing of structures located on both its and their property, the Brendels next argue that this case is now somehow moot because Consol has completed mining beneath their surface property. Such argument, of course, ignores the fact that the impact of the federal Defendants' "final agency action" and refusal to recognize Consol's right to "object" to the listing of their property is on-going.

Clearly, if the "listing" of the Brendels' structures located above Consol's property interests would have had no impact on Consol's ability to mine and remove its coal without any additional burdens being placed on it, this case would never have been initiated.[2] However, inclusion on the NRHP does result in direct and, in this case, on-going burdens being imposed on Consol which, but for the listing, would not be imposed.[3]

Under applicable state law and regulations governing the mining of bituminous coal by underground mining methods, in the typical case, the coal operator is required to repair, or pay

---

[2] And, in all probability, the Brendels would never have bothered to "list" their structures on the NRHP.

[3] The obviousness of this is demonstrated by the fact that 36 CFR 60.2(d) provides that: "If a property contains surface coal resources and is listed on the National Register, certain provisions of the Surface Mining and Control Act of 1977 require consideration of a property's historic values in the determination on issuance of a surface coal mining permit."

compensation for, any "material" damage caused by its mining activities to "dwellings." 52 P.S. § 1406.5d; 25 Pa. Code § 89.142a (f). This obligation, while burdensome, has become relatively routine and involves little more than sending a reputable local contractor to assess the extent of mining-related "damage," obtaining an estimate and negotiating either a cash settlement with the property owner, or making arrangements to cause the necessary repairs to be made. No special "pre-mining" surveys are required. *See id*. After mining, no specialized contractors are required to assess damage, no special materials must be used during repair, and no standards, other than appropriate local building codes need be adhered to. *See id*.

However, for properties "listed" on the NRHP, the obligations placed on operators like Consol increase substantially. Not only can the Department of Environmental Protection ("DEP") impose an obligation to make additional pre-mining demonstrations before mining can proceed beneath a "listed" structure, 25 Pa. Code § 86.37 (6), after mining has occurred, all "damage" to a "listed" structure (unlike a normal structure), must be reviewed by specially trained "experts," and the damage repaired not using normal materials or to ordinary building code standards, but to the "standards" for restoration of "historic" structures which have been developed by the National Park Service. As is clear from a review of an order recently served on Consol by the DEP, which obligates it to initiate repairs to the Brendels' structures, the additional costs and expenses associated with "repairing" damage to an allegedly "historic structure" are enormous and far in excess of what would be the case for a "non-historic" structure. *See* **Exhibit "A,"** DEP's Order dated February 1, 2006; *see also* Consol's Amended Complaint, ¶ 21 ("In addition, Consol now faces demands for heightened repair costs from the Brendels and otherwise for alleged damages caused by its mining activities under the Brendels' property. Such heightened repair costs are improperly premised on the faulty notion that the

00693509.DOC

Thralls House, the Contributing Structures and nine acres of land are rightly listed on the NRHP and entitled to national historic status." Such allegations must be accepted as true for purposes of the Brendels' Motion to Dismiss.)[4]

Accordingly, the "harm" is, of course, on-going and immediate and demonstrates that there is still a very live controversy between all parties to this proceeding. If, as claimed by Consol, the structures owned by the Brendels lack any "historic" merit and should not have been included on the Register, then the future obligations facing Consol will be far less. That Consol may have mined its coal underlying the Brendels' property has no bearing on the continuing adverse impacts which stem from the "final agency action" from which review is being sought in this case.

### C. Exhaustion of Administrative Remedies is Not Applicable When, as Here, the Agency Action Under Review is "Final" and the Claims Raised Involve Constitutional Questions.

    **1. Because the action under review is a final agency action and is not subject to being stayed while a "delisting petition" is pending, the doctrine of "exhaustion of administrative remedies" is not applicable.**

In Count I of its Amended Complaint, Consol seeks review of a "final agency action" -- namely, the decision of the federal Defendants to "list" on the NRHP structures owned by the Brendels which are located over coal and the support estate owned by Consol. Review of this

---

[4] The Brendel property was purchased by them for $40,000 in 1971, and appraised for $210,000 shortly prior to mining. Yet, the DEP's estimate of Consol's cost of repair obligation, as set forth in the order, is nearly $1 million -- $926,840.80 specifically.

Moreover, since the Brendels purchased the property at issue over thirty years ago, they have done very little "maintenance" work to their home despite its alleged "historic" status. Indeed, according to Mrs. Brendel during a recent deposition, they merely added an asphalt roof to their home, changed gutters and downspouts, periodically painted, added a new bathtub, added a washer and dryer to the laundry room, installed a swimming pool, fixed the fence, shored up the floor, added a trough to the pigpen and replaced boards in the garage.

"final agency action" is sought under the Administrative Procedure Act ("APA"). 5 U.S.C. §701 *et seq.*

Section 10(c) of the APA provides:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or **unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.** 5 U.S.C. §704 (emphasis added).

The NHPA does not expressly require parties objecting to a listing to file a petition to "delist" a property. Although the regulations applicable to proceedings to list structures on the NRHP do provide for the filing of a petition to "delist" (36 CFR § 60.15), the initial action which "listed" the property is nevertheless a "final agency action" because the designation is not "stayed" in the event a petition to "delist" is filed. 5 U.S.C. §704; *See also Darby v. Cisneros*, 509 U.S. 137, 153 (1993).

In *Darby*, the Supreme Court addressed the issue of whether Section 10(c) of the APA could limit the authority of courts to impose additional exhaustion requirements as a prerequisite to judicial review. 509 U.S. at 145. In reviewing the legislative history of Section 10(c), the Court noted that the Senate Judiciary Committee had explained:

> An agency may permit an examiner to make the initial decision in a case, which becomes the agency's decision in the absence of an appeal to or review by the agency. If there is such review or appeal, the examiner's initial decision becomes inoperative until the agency determines the matter.... **In no case may appeal to "superior agency authority" be required by rule unless the administrative decision meanwhile is inoperative**, because otherwise the effect of such a requirement would be to subject the party to the agency action and to repetitious administrative process without recourse. There is a fundamental inconsistency in requiring a person to continue "exhausting" administrative processes after administrative action has become, and while it remains, effective.

*Id.* at 148 (citing S.Rep.No. 752, 79th Cong., 1st Sess., 27 (1945); Administrative Procedure Act: Legislative History 1944-46, S.Doc. No. 248, 79th Cong., 2d Sess., 213 (1946) (emphasis added).

The Court concluded that, "Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be 'inoperative' pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review." *Id.* at 153.

Here, there is absolutely no provision in the NHPA or the applicable regulations which provides that the "finality" of the federal Defendants' decision in this case to "list" the Brendels' structures located over Consol's coal interests is (or can be) "stayed" in the event a petition to "delist" is filed. The opportunity to file a petition to "delist" a property is nothing more than an opportunity to request "reconsideration" of an otherwise final and immediately effective federal agency action. In circumstances like these, where the agency action under review is immediately final and results in adverse consequences to an aggrieved party (see discussion, *supra*), there is no requirement that the aggrieved party seek any further "reconsideration" of the initial decision. Absent provisions in the applicable statute or regulations which provide that the effect of the decision to "list" the Brendels' structures is stayed pending the resolution of a petition to "delist" these structures, there is no requirement to submit such a petition. 5 U.S.C. § 704. *See also Darby*, 509 U.S. at 153; *Marine Mammal Conservancy, Inc. v. Dept. of Agriculture*, 134 F.3d 409, 411 (D.C. Cir. 1998) (holding that an appeal to a superior agency authority is a prerequisite to judicial review only when required by agency rule and when administrative action is stayed pending review); *Lockett v. FEMA*, 836 F.Supp. 847, 853 (S.D. Fla. 1993) (holding that because the agency rule did not mandate appeal nor state that the initial decision would become inoperative pending appeal no agency appeal was required before judicial review).

The District Court for the Southern District of New York's decision in *White v. Shull*, 520 F.Supp. 11 (S.D.N.Y. 1981), on which the Brendels rely, is neither controlling on this Court nor was it correctly decided. Not only did that Court fail to discuss the operative provisions of the Administrative Procedure Act (specifically Section 10(c) of the APA, 5 U.S.C. § 704), but it also did not have the benefit of the Supreme Court's analysis of that section in *Darby*, which was decided years afterward.[5]

For these dispositive reasons, the decision to list the Brendels' structures was, and remains, a "final" action reviewable under the Administrative Procedure Act. There is no requirement, in these circumstances, for Consol to file a "petition" to delist or for reconsideration of the federal Defendants' action. As such, the Brendels' Motion to Dismiss should be rejected.

**2. Exhaustion of administrative remedies is not required when constitutional claims are alleged or when exhaustion is futile.**

The gravamen of Consol's claim in Count II of its Amended Complaint is that the current procedures for listing a property on the NRHP fail to provide property owners like Consol, whose constitutionally protected state law property interests might be adversely affected by a listing, advance notice of the proposed listing and any meaningful opportunity to comment on and oppose the listing before it becomes final. Such procedures fail to afford Consol due process of law as guaranteed to them by the Fifth and Fourteenth Amendments to the United States Constitution. *See* Amended Complaint, ¶¶ 27, 28.

The Third Circuit has developed three broad exceptions to the exhaustion doctrine:

> 1) when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights, 2) when resort to administrative procedures is

---

[5] No other courts have, to Consol's knowledge, relied on *White v. Shull* since the Supreme Court's decision in *Darby*.

clearly shown to be inadequate to prevent irreparable injury or 3) when exhaustion is futile.

*Facchiano v. Dept. of Labor*, 859 F.2d 1163, 1166 (3d Cir. 1988); *Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d 231, 245 (3d Cir. 1980).

Thus, the Brendels' argument that the doctrine of exhaustion of administrative remedies has application to Count II of Consol's Amended Complaint is misplaced. When, as is the case here, a person alleges that the federal government has refused to recognize that its rights constitute "a property interest" which cannot be adversely affected without affording them due process of law (in this case, the same right to "object" to an action as is given other "owners" of affected property and which action significantly devalues that property interest), the doctrine of administrative remedies is not applicable. *See id.*

Furthermore, in this instance, there is actually no administrative remedy available to Consol because the federal Defendants do not currently recognize it as an "owner" who has rights under the NHPA to "object" to the listing of structures overlying its land. Therefore, if Consol were to "invoke" the "remedy" allegedly available to them, namely, filing a "Petition to Delist" the Brendels' structures (see 36 CFR § 60.15), this would be a futile gesture.[6]

The best evidence of this "futility" is a prior decision of the Keeper of the NRHP made in connection with another case involving a Pennsylvania coal operator, the facts of which are indistinguishable from those present here. More specifically, several years before the Brendels sought to use the NHPA as a means to "stop" mining beneath their property, two other Greene

---

[6] Of course, as discussed above, there is no requirement that Consol file a "petition to delist" the Brendels' structures as a prerequisite to its seeking review of the initial "listing" action because that action is, under the express terms of the APA, as interpreted by the Supreme Court, a "final" and immediately reviewable action.

County property owners, Laurine and Murry Williams, were the first persons to attempt to do so. Like the Brendels, the Williams did not own the Pittsburgh Seam of coal which was situated under their allegedly "historic" structures, nor did they own the right to have these structures supported. These two fee simple estates in land were owned by a coal company, Cyprus Southern Realty Corporation ("Cyprus"). Believing that it had a right to "object" to the listing of structures overlying its fee simple property rights, the coal owner/operator proceeded to file a "petition" to "delist" the Williams' property, invoking the "remedy" now said to be "available" to Consol. After considering Cyprus' petition, the Keeper initially did "delist" the Williams' property, for the reasons discussed in a decision, a copy of which is attached hereto as **Exhibit "B"**.[7] However, the Keeper refused to recognize Cyprus as an "owner" which was entitled to veto the listing of the Williams' structures on the NRHP. This is clear from the subsequent decision of the Keeper to immediately "relist" the Williams' farm despite Cyprus' clear "objection" to the listing. 65 Fed.Reg. 43782-02 (July 14, 2000). Plainly, had the Keeper concluded that Cyprus was an "owner" she could not have proceeded to "relist" the Kent Farm on the NRHP because, the NHPA does not allow her to "list" properties on the Register over the objection of an "owner."

Faced with this clear precedent, which found that coal owners like it were not "owners" within the meaning of 30 CFR § 60.15, Consol had no reason to waste its time and effort as Cyprus had done, by seeking to "delist" a property which, in the end, would be "relisted"

---

[7] The Keeper apparently concluded that Cyprus Southern should have been formally notified of the proposed listing. Given this conclusion it is somewhat surprising that no subsequent effort was made to amend the applicable regulations to provide a requirement that other coal operators, like Consol, also be formally notified of the pendency of similar nominations. In any event, and as noted in the discussion which follows, it remains clear that the federal Defendants still do not recognize the owners of the mineral and support estates as "owners" entitled to "object" to a listing.

because the federal Defendants do not recognize it as an "owner" that enjoys a right under the NHPA to veto the listing of the Brendels' structures. Even persons that have not raised a constitutional claim are not required to exhaust administrative remedies if doing so would be futile. *See Facchiano*, 859 F.2d at 1166; *Susquehanna Valley Alliance*, 619 F.2d at 245.[8]

### D. There is No Merit to the Claim that Consol's "Hands Are Not Clean."

Finally, the Brendels' "unclean hands" argument rests solely upon the Brendels' invalid theory that Consol in some manner "illegally aborted the NHPA Section 106 process." *See* Brendels' Memorandum, page 15. The short and complete answer to this argument is contained in this Court's recent opinion filed February 17, 2006, dismissing the Brendels' claims against other defendants who were alleged to have participated in "aborting" the Section 106 process.

The Brendels, as third-party plaintiffs, asserted that the Office of Surface Mining and Reclamation and Enforcement ("OSM") failed to comply with the Section 106 process. In granting OSM's motion to dismiss, this Court held that because the Pennsylvania mining permit decisions were not "federally funded" or "federally licensed" undertakings but instead were undertakings "subject to state or local regulation administered pursuant to a delegation or approval by a Federal agency," the requirements of Section 106 do not apply. *Consolidation Coal Co. v. Dept. of the Interior*, No. 2:00cv2120, slip op. at 5 (W.D. Pa. Feb. 17, 2006) (citing

---

[8] The Brendels have also suggested that Consol should be required to request the federal Defendants to "amend" their rules defining "owner" to include them. While, to Consol's knowledge, no procedure exists for petitioning the federal Defendants to initiate new rulemaking, as may be the case with the statutes involved in the cases cited by the Brendels, this too would have been a futile gesture. Given the Keeper's decision in the Kent Farm case, it remains clear that the owner of the coal and support estates lying beneath a property upon which are located structures proposed for listing on the NRHP is simply not considered an "owner" by the federal Defendants and nothing Consol might argue to them would have resulted in a new definition of that "term."

*Nat'l Mining Ass'n v. Fowler*, 324 F.2d 752, 769 (D.C. Cir. 2003); *Sheridan Kaloram Historical Ass'n v. Christopher*, 49 F.3d 750, 755 (D.C. Cir. 1995).

Accordingly, in operating pursuant to its state mining permit, Consol was similarly not required to comply with the Section 106 process. As such, the Brendels' argument that Consol does not have clean hands to assert its claim is without merit and should be instantly rejected.

## IV.   Summary And Conclusion

As the fee simple owner of the mineral rights and support estate lying beneath the Brendels' property, Consol has standing to object to the listing of the property on the NRHP and to challenge the constitutionality of the listing procedures of the Keeper and the National Park Service. Given that there are on-going adverse consequences affecting Consol, this case remains a live controversy.

The initial decision of the Keeper of the NRHP to include structures owned by the Brendels located over coal owned by Consol was a "final agency action." Neither the NHPA, nor the applicable regulations relating to "listing" of structures or properties on the Register provide for a stay of that decision in the event an interested party might wish to seek a reconsideration of the "listing" action. In these circumstances there is no requirement to further "exhaust" any otherwise theoretically available administrative review opportunities. Further, in this case, where a claim of constitutional deprivation is alleged, there is no requirement to first exhaust any otherwise available administrative remedy. In addition, given the manner in which the federal Defendants currently define "owner," Consol would have no right to have its "objection" counted in any type of administrative proceeding, rendering any resort thereto futile.

Lastly, the Brendels' argument that Consol has illegally aborted the NHPA Section 106 process is precluded by this Court's decision holding that the Section 106 process does not apply to state mining permits, such as the one held by Consol.

In summary, for all the reasons discussed above in the foregoing Memorandum, the Motion to Dismiss filed by the Brendels should be dismissed and this case allowed to proceed.

Dated: March 15, 2006                                   Respectfully Submitted,

*Thomas C. Reed, Esquire*
Thomas C. Reed, Esquire
PA ID No. 19913
Dinsmore & Shohl LLP
The Grant Building
330 Grant Street
Suite 2415
Pittsburgh, PA 15219

*Joseph A. Katarincic, Esquire*
Joseph A. Katarincic, Esquire
PA ID No. 11427
Lauren D. Rushak, Esquire
PA ID No. 83728
Kerri L. Coriston, Esquire
PA ID No. 89838

Thorp Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425

Attorneys for Plaintiff
Consolidation Coal Company

00693509.DOC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Consolidation Coal Company's Memorandum in Opposition to Motion to Dismiss Filed by Roy and Diane Brendel** has been served by Notice of Electronic Filing pursuant to local rule of Court upon all parties.

*/s/ Joseph A. Katarincic, Esquire*